## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN H. MOORE, APPELLANT.

*Manufacturing corporation — erecting upon its own tract of land factories and tenements for its employees — right conferred thereby upon third persons to use the streets laid out through its lands — assault — competency of evidence as to the manner in which words spoken at the time were understood by the party assaulted.*

A corporation, engaged in the iron and ore business, and owning a large tract of land, in the development of its business and for the convenience of its employees erected thereon the company's offices, shops and sixty or seventy tenement-houses occupied by its employees, a public store, school-house and chapel. An open road, wholly upon the private land of the corporation, lead from the public highway to the village street. A peddler of milk and vegetables, who had been accustomed to furnish supplies to certain of the residents of this community, and to enter the same and pass through its streets for this purpose, was notified by the corporation that he must discontinue his traffic. Upon his refusal to comply with this request he was, while seated in his sleigh driving his team of horses into the village to deliver milk to his customers, intercepted by an agent of the corporation upon the road leading from the public highway to the village and on his refusal to stop, when ordered so to do, the agent of the corporation seized the reins in front of the peddler's hands and told another person to take the horses by the heads and turn them around, which he did, the agent of the corporation remarking that "the easiest way is the best way." The peddler being thus prevented from entering the place, drove away.

In a proceeding taken in the Court of Special Sessions, in which the agent of the corporation was convicted of assault in the third degree, it was urged that no assault had been committed upon the peddler, for the reason that there was no intention to harm him, and that the agent of the corporation did not lay his hands upon him.

*Held,* that as the force which was applied to the horses and sleigh was applied to the peddler, it constituted, in law, bodily harm.

That one receives bodily harm, in a legal sense, when another intentionally touches his person against his will with hostile physical force, or projects such force against his person and deprives him of the control of his own person.

That, in the face of the testimony given in this case, it was not error to refuse to receive evidence of the fact that bodily harm to the peddler was not intended.

It was further urged that the peddler was a trespasser; that as no more force was used than was reasonable and necessary to eject him from the premises, that the alleged assault was justified.

*Held,* that the peddler was not a trespasser; that by laying out the streets leading to and about the place, the same were made and opened by the Ore and Iron Corporation for such public use as was necessary for the wants, convenience and happiness of the people residing there, and, to the extent of this public use, were subjected to the law which regulates the exercise of public rights in such places.

*Semble*, that while the company undoubtedly had the right to depopulate the place and restore its lands to its exclusive private domain, yet as long as it continued to use them for village purposes, and enjoyed the benefit of public association and communication incident thereto, it must accept the burdens which necessarily and properly were involved in such use.

That it was competent for the peddler to testify as to what he understood by the defendant's remark "the easiest way is the best way."

APPEAL from the judgment of the Court of Sessions of Columbia county, affirming the judgment of conviction of the defendant of assault in the third degree, rendered by the Court of Special Sessions upon the verdict of a jury, and also the sentence upon such conviction.

*Frank E. Smith*, for the appellant.

*A. B. Gardenier*, district attorney, and *L. F. Longley*, for the People, respondent.

LANDON, J.:

The material facts are not in dispute. The main questions are whether the conceded facts show that the defendant committed an assault upon the complainant, and if so, whether the assault was justifiable.

The defendant was in the employ of the Burden Ore and Iron Company. This company owns a large tract of land in Livingston, Columbia county, and has, in the development of its business, created upon its lands the so-called village of Burden. This consists of the company's offices, shops, sixty or seventy tenement-houses, occupied by its servants and their families, a public store, school-house and chapel. A post-office is established there. An open road or street, wholly upon the company's lands, leads from the public highway to the village. The tenement-houses of the village are in rows upon both sides of the village streets. All these streets and roads are open and to every appearance are public highways. The company, however, retains title to the land, and the public authorities have not claimed or assumed any authority over them.

The complainant Snyder was a peddler of milk and vegetables and had customers for his supplies in this village. The company desired him to discontinue his traffic in the village, and to give it to another person. It notified him that the village and its streets were its private property, and that he must not sell milk there any more.

He refused to discontinue. The company directed the defendant to keep him out of the village, but to use no more force than was necessary for the purpose, and to be careful not to do him personal injury. The defendant, in pursuance of this direction, assisted by one Ahlers, on the 14th day of March, 1887, intercepted Snyder upon the road leading from the public highway to the village. Snyder was alone, was seated in his sleigh driving his team of horses on his way to deliver milk to his customers, and especially some apples which had been ordered by one of them. The defendant told Snyder he was trespassing and that he had orders to stop him. Snyder attempted to drive on. The defendant then seized the lines in front of Snyder's hands, told Ahlers to take the horses by the heads and turn them around, which Ahlers immediately did, the defendant at the same time remarking that "the easiest way is the best way." When the team and sleigh, with Snyder in it, had been turned around, defendant barred the passage towards the village with an iron pipe. Snyder thereupon drove away.

Defendant urges that this was no assault, for the reason that there was no intention to hurt Snyder; and that he did not lay his hands upon him. It is plain, however, that the force which he applied to the horses and sleigh just as effectually touched the person of Snyder, as if he had taken him by his ears or shoulders and turned him right about face. The horses and sleigh were the instruments with which he directed and augmented his personal and physicial force against, and upon the body of Snyder. Snyder did receive bodily harm. One receives bodily harm, in a legal sense, when another touches his person against his will with physical force, intentionally hostile and aggressive, or projects such force against his person. Here, for the moment, Snyder was deprived by the defendant of his own control of his own person; and he was controlled, intimidated and coerced by the hostile aggressive physical force of the defendant. The offer to prove that bodily harm was not intended was made in the face of the defendant's testimony that he intended to do just what he did do. The obvious purpose was to prove that there was no intention to wound or bruise the defendant, or cause him physical pain. So long as this was not claimed or proved on the part of the prosecution, disproof of it was properly rejected for the reason that such disproof would have

raised or suggested a false and immaterial issue, tending possibly to the miscarriage of justice.

We assume that if Snyder was a trespasser the assault was justifiable, for no more force was used than was reasonably necessary to eject him from the premises; but he was not a trespasser. The streets leading to and about this village were made and opened by the Burden Iron and Ore Company for such public use as was incident to the wants, convenience and happiness of the people residing there. To the extent of this public use the company subjected its private property to the law which regulates public rights. (*Munn* v. *Illinois*, 94 U. S., 113.) No doubt it can depopulate its village and restore its lands to the solitude of its exclusive private dominion; but as long as it enjoys the benefits of public association and communication it must accept the burdens necessarily and properly incident to them. By reserving the legal title to the thoroughfares of its village, it does not reserve autocratic powers over the people residing along them. To prevent the members of its community from buying supplies of Snyder, or of any tradesman not nominated by the company, would be to introduce a condition of vassalage inconsistent with our free institutions. If these families may buy of Snyder, then he may deliver his wares to them, and use for the purpose the appropriate thoroughfares. The assault was, therefore, not justifiable.

After the jury had retired to consider of their verdict they sent word to the magistrate to come to their room. He entered their room alone. They then asked him the question, What should be the form of their verdict in case they had agreed upon it? he answered "Guilty, or not guilty;" and then withdrew. It affirmatively appears that nothing else occurred. This was a technical error. (Code Crim. Pro., § 427.) Section 764 requires us to give judgment "without regard to technical errors or defects which have not prejudiced the substantial rights of the defendant." In the *People* v. *Cassanio* (30 Hun, 388) the court could see that an error somewhat similar was prejudicial to the defendant. If we could not see that the error in this case was harmless, we probably would reverse the judgment; but as we do see that it was harmless we disregard it.

It is now urged that the affidavit upon which the warrant was

issued did not state facts sufficient to constitute the offense of assault in the third degree. It does not appear from the return that this objection was taken before the magistrate. If it, in fact, was taken and a review of the decision of the court below upon the objection was desired, an amendment of the return should have been procured. As it now is, no ruling of the court upon the objection is before us.

The defendant objected to the question put to Snyder, what he understood by defendant's remark that "the easiest way is the best." He answered that he thought they meant to handle him roughly. We think the question and answer not improper. The words were intended to take effect. Defendant was responsible for their effect, if their actual effect was within their reasonable meaning under the circumstances. It was proper for the jury to know what effect the spoken acts of the defendant had upon the complainant in connection with his application of physical force. They could see that they might intimidate, and not to permit them to know that they did intimidate, would be to withhold from them part of the whole truth.

The people were permitted to prove that the person who the company desired should supersede Snyder in the milk traffic of the village was an assessor of the town of Livingston. The defendant had given evidence showing that, in connection with the company's request of Snyder that he should discontinue selling milk in the village, statements had been made to him tending to show that it was proper and reasonable that Mr. Schults should take his place. Since the defendant thus placed certain reasons for the company's action before the jury, the additional fact that Mr. Shults was an assessor was not so obviously remote as to enable us to say that it was wholly irrelevant to the consideration of the reasons which the defendant had been permitted to adduce.

The judgment of the Court of Sessions should be affirmed.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment affirmed, with costs.